Jyotin Hamid (jhamid@debevoise.com)
Brooke J. Willig (bjwillig@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-1031

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
| | |
|---|---|
| W. P. CAREY INC., | : Civil Action No. |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| DEBRA E. BIGLER, | : |
| | : |
| Defendant. | : |
---------------------------------------------------------------- x

## **COMPLAINT**

Plaintiff W. P. Carey Inc. ("WPC"), by and through its undersigned counsel, files this Complaint against Defendant Debra E. Bigler for declaratory judgment and breach of contract, and in support thereof respectfully alleges:

### **Introduction**

1. This action arises from Ms. Bigler's blatant disregard and violation of her release of claims and breach of a covenant not to sue contained in a severance agreement she signed after leaving employment with Carey Financial, LLC ("Carey Financial"),

WPC's wholly-owned subsidiary (the "Letter Agreement"). A copy of the Letter Agreement is attached hereto as **Exhibit A**.

2.	In April 2015, Ms. Bigler accepted a two-year position with Carey Financial with the mutual expectation, confirmed in writing, that her "employment relationship would come to an end at the conclusion of the two-year period." As expected, in April 2017, when the second year drew to a close, Carey Financial informed Ms. Bigler that her employment would be terminated. Carey Financial presented her with the Letter Agreement, which offered to pay the cost of her continued health and dental insurance benefits in exchange for a written release of claims and covenant not to sue. Ms. Bigler signed the Letter Agreement knowingly and voluntarily, and proceeded to enjoy the benefits of that bargain for the next seven months.

3.	On the very day after the benefits provided under the Letter Agreement ran out, however, Ms. Bigler filed an arbitration with the Financial Industry Regulatory Authority ("FINRA") against WPC and Carey Financial, asserting claims for age and gender discrimination, among others, in blatant disregard and violation of the release of claims and covenant not to sue to which she agreed.[1]

4.	In that proceeding, Ms. Bigler argues that she was "fraudulently induced" to sign the Letter Agreement because WPC did not give her WARN notice of a reduction-in-force ("RIF") it later undertook, which, had she been included within it,

---

[1] Although Carey Financial is bound to arbitrate disputes with Ms. Bigler, FINRA has confirmed that WPC is not subject to any mandatory obligation to submit to arbitration and can choose to participate or not in the FINRA arbitration at its discretion. WPC will not participate in the FINRA arbitration and instead brings this case.

2

would have resulted in her receiving more lucrative benefits.  She therefore seeks to have the Letter Agreement and its release of claims declared invalid.

5.      The argument is frivolous for several reasons.  At the time Ms. Bigler was terminated in April 2017, WPC had not decided to do a RIF.  That decision was not made until June 2017, at which time WPC filed appropriate notice with the New York State Department of Labor ("DOL") and gave appropriate notice to the sixty employees who would be affected.  Thus, Ms. Bigler's assertion that she was defrauded rests on the absurd premise that she should have received notice of the RIF *before* the decision to proceed with it and *before* any affected employee or the DOL received notice.  In any event, Ms. Bigler's termination did not result from the decision to do a RIF (a decision made *after* she was terminated) – it resulted from the decision made two years earlier, in April 2015, and communicated to her and confirmed by her in writing at that time, that her employment was expected to end in April 2017.

6.      Ms. Bigler's attempt to avoid the obligations to which she agreed in the Letter Agreement should, therefore, be rejected.

**Parties**

7.      Plaintiff W. P. Carey Inc. is a Maryland corporation with its principal place of business at 50 Rockefeller Plaza, New York, New York 10020.  WPC is the corporate parent of Carey Financial, which maintains a principal place of business at 50 Rockefeller Plaza, New York, New York 10020.

8.      Defendant Debra E. Bigler is a citizen of Florida who was previously employed by WPC and Carey Financial.

**Jurisdiction and Venue**

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, Plaintiff is a company incorporated in Delaware and headquartered in New York and Defendant is a citizen of Florida.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the cause of action herein occurred in this District.

**Facts**

11. Ms. Bigler began her years of employment with WPC and Carey Financial in 1989. Between 1989 and 2015, Ms. Bigler served in a number of positions involving sales of WPC products in the Southern United States. In those positions, Ms. Bigler was also responsible, from time to time, for hiring and supervising staff, and she frequently traveled to the New York office.

12. By early 2015, Ms. Bigler's performance had been lagging for some time. As a result, in early 2015, her supervisor, Trisha Miller, offered her a choice between two paths in order to continue her employment at Carey Financial. First, she could go on a performance improvement plan, with the understanding that a failure to meet goals under the plan could result in termination. Alternatively, she could accept a two-year position as "Ameriprise Ambassador," responsible for maintaining relationships with contacts at an important client, Ameriprise, and helping plan events to celebrate the 25th anniversary of Carey Financial's relationship with Ameriprise.

13. Ms. Bigler considered the options and accepted the position of Ameriprise Ambassador. The terms of that offer were memorialized in an April 23, 2015 email exchange between Ms. Bigler and Ms. Miller, attached hereto as **Exhibit B**.

14. Ms. Miller's email stated expressly that Ms. Bigler was being offered a "two-year position" as Ameriprise Ambassador. *Id.* It further expressly stated Carey Financial's expectation, communicated in writing to Ms. Bigler, that her employment would end at the end of the two-year period. *Id.* Specifically, it stated: "Although we would consider whether any new position might be available at the end of the second year, **our current expectation, which we have discussed with you, is that your employment relationship would come to an end at the conclusion of the two-year period**." *Id.* (emphasis added).

15. Ms. Bigler was offered compensation "structured to be essentially the equivalent of what you earned in 2014 for each of the next two years," "extend[ing] through the end of April, 2017." *Id.* At that date, with the expectation that Ms. Bigler's employment would be terminated, Carey Financial "would be prepared to offer (subject to appropriate documentation) continued health insurance coverage through the age of 65." *Id.*

16. To accept the offer, Ms. Bigler was asked to "acknowledge [her] acceptance of the position and the terms stated above." *Id.* She replied, "Accepted per your request. This 23rd of April 2015, Deb Bigler." *Id.*

17. For the next two years, Ms. Bigler served as Ameriprise Ambassador.

18. As expected, when the two-year period drew to a close, Ms. Bigler was reminded that the Ameriprise Ambassador position would conclude at the end of April 2017 and was informed that, consistent with the expectation and terms of the position expressed two years prior, her employment at Carey Financial would be terminated.

19. On April 13, 2017, Ms. Bigler was presented with the Letter Agreement confirming her separation from employment, effective as of April 30, 2017.

20. In the Letter Agreement, Carey Financial offered to pay the cost of continuing Ms. Bigler's health and dental coverage from April 30, 2017 to November 30, 2017 in exchange for, among other things, Ms. Bigler's release of "any and all claims which may in any way arise out of or under, be connected with or relate to your employment at the Company, your activities at the Company, [or] your separation from employment at the Company."

21. Paragraph 4 of the Letter Agreement further specified that the released claims would include, but would not be limited to:

> any claim *(a)* based on any federal, state or local statute, including, but not limited to, any statute relating to employment, medical leave, retirement or disability, age, sex, pregnancy, race, national origin, sexual orientation or other form of discrimination, including, but not limited to, all claims arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Civil Rights Act of 1991, the Equal Pay Act, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, the New York Human Rights Law, the New York City Human Rights Law; *(b)* for wrongful or retaliatory termination of any kind; *(c)* for fraud or fraud in the inducement; *(d)* for negligent misrepresentation; *(e)* relating to any implied or express contract, promise or agreement (whether oral or written); *(f)* for intentional or negligent infliction of emotional distress or harm, defamation or any other tort; *(g)* for additional compensation, severance pay or benefits of any kind; *(h)* for breach of fiduciary duty; *(i)*

for attorneys' fees or costs; or *(j)* for promissory estoppel (collectively, the "Released Claims").

22. Paragraph 4 of the Letter Agreement also included an express "covenant not to sue the Company" or any of its "current and former parents, subsidiaries, affiliates, predecessors and successors" with respect to any of the Released Claims.

23. Ms. Bigler was given twenty-one days within which to review the Letter Agreement and consider its terms.

24. In addition, pursuant to Paragraph 5, Ms. Bigler had seven days following execution within which to revoke the Letter Agreement.

25. Ms. Bigler signed the Letter Agreement on May 3, 2017, after considering it for twenty days.

26. Ms. Bigler acknowledged in writing that she understood the terms of the Letter Agreement and was agreeing to its terms voluntarily and knowingly. Specifically, Paragraph 5 of the Letter Agreement, to which Ms. Bigler agreed, states:

> You hereby agree, acknowledge, and affirm each of the following: *(a)* that you fully understand the terms and conditions stated in this letter agreement, and are executing this letter agreement with the intent to be legally bound thereby; *(b)* that you have been encouraged by representatives of the Company to have this letter agreement reviewed by legal counsel of your own choosing and that you have been given ample time to do so prior to signing it; [and] *(c)* that you have had the opportunity to negotiate concerning the terms of the letter agreement . . . .

27. Ms. Bigler did not revoke the Letter Agreement within the seven-day period provided for in Paragraph 5.

28. Over a month later, and over two months after Ms. Bigler first received the Letter Agreement confirming her separation, WPC announced on June 15, 2017 that

7

it would cease all non-traded retail fundraising activities carried out by Carey Financial effective June 30, 2017.  Also on June 15, 2017, WPC filed a Worker Adjustment and Retraining Notification Act ("WARN") notice with the DOL announcing that it was undertaking a "plant unit closing," with separations commencing on June 30, 2017 and continuing through September 29, 2017.  A copy of the WARN notice filed with the DOL is attached hereto as **Exhibit C**; and a copy of WPC's press release issued on June 15, 2017 is attached hereto as **Exhibit D**.

29. No notice of the RIF was given to any affected employees or to any regulators prior to June 15, 2017.

30. Nevertheless, Ms. Bigler's Statement of Claim in the FINRA arbitration contains the false statement, alleged on "information and belief," that "all employees of Carey Financial were given notice" of the RIF "by April 16, 2017, at the latest."

31. Perhaps Ms. Bigler made this false statement on a critical fact in her Statement of Claim because, instead of doing appropriate factual due diligence before filing, she simply assumed, erroneously, that the fact that WPC announced the RIF on June 15 must mean that notice to employees was provided 60 days in advance of that date.

32. In fact, as permitted under both the federal and New York State WARN acts, Carey Financial employees separated as a result of the RIF were appropriately provided statutory notice starting as of June 15, 2017 or were promptly provided with pay in lieu of notice in full satisfaction of federal and state WARN Act requirements.

8

33. Thus, Ms. Bigler's claims in the FINRA arbitration rest on demonstrably false factual assertions, pleaded "on information and belief," which could have been confirmed as false through minimal due diligence. For this reason, and others, her FINRA arbitration claims should be considered frivolous and in bad faith.

34. Ms. Bigler was not entitled to be treated as part of the RIF for two obvious reasons. First, the decision to undertake the RIF had not been made at the time her employment terminated in April. Second, she was terminated not because of the decision to do a RIF but rather due to a decision made, communicated to her, and confirmed by her in writing two years earlier that Carey Financial expected her employment to end in April 2017.

35. Ms. Bigler received the separation benefits provided for under Paragraph 2 of the Letter Agreement, namely the cost of continued health and dental insurance coverage from April 30, 2017 through November 30, 2017.

36. After receiving all separation benefits to which she was entitled under the Letter Agreement, Ms. Bigler filed a FINRA arbitration against WPC and Carey Financial in New York on December 1, 2017, the day after those benefits ceased.

37. In that proceeding, Ms. Bigler asserts a number of claims validly released in the Letter Agreement, including claims under the New York State and City Human Rights Laws and under the federal and New York WARN Acts. Seeking to avoid the release, she claims to have been fraudulently induced to sign the Letter Agreement because WPC and Carey Financial did not give her notice of the RIF.

### First Claim for Relief
### (Declaratory Judgment)

38. WPC repeats and realleges the allegations contained in Paragraphs 1 through 37 as though fully set forth herein.

39. Carey Financial and Ms. Bigler entered into a Letter Agreement in which Ms. Bigler released any and all claims against Carey Financial, its parents, subsidiaries, affiliates, predecessors and successors relating to or arising out of her employment at and/or separation from Carey Financial and its affiliates.  The Letter Agreement constitutes a valid and binding written contract, made for valid consideration and governed by New York law.

40. Ms. Bigler entered into the Letter Agreement voluntarily and knowingly.

41. WPC, as the corporate parent and affiliate of Carey Financial, is an intended third-party beneficiary of the Letter Agreement's release of claims.

42. Based on the foregoing, WPC seeks a declaratory judgment that the Letter Agreement is valid and binding and that Ms. Bigler has validly released the claims filed in the FINRA arbitration.

### Second Claim for Relief
### (Breach of Covenant Not to Sue)

43. WPC repeats and realleges the allegations contained in Paragraphs 1 through 42 as though fully set forth herein.

44. Carey Financial and Ms. Bigler entered into a Letter Agreement in which Ms. Bigler released any and all claims against Carey Financial, its parents, subsidiaries,

affiliates, predecessors and successors relating to or arising out of her employment at and/or separation from Carey Financial and its affiliates and covenanted not to sue on any such claims. The Letter Agreement constitutes a valid and binding written contract, made for valid consideration and governed by New York law.

45. WPC, as the corporate parent and affiliate of Carey Financial, is an intended third-party beneficiary of the Letter Agreement's release of claims.

46. Carey Financial has performed all of its obligations under the Letter Agreement.

47. Ms. Bigler has unjustifiably and inexcusably breached and continues to breach Paragraph 4 of the Letter Agreement by suing WPC and Carey Financial for claims that she validly released under the Letter Agreement.

48. That action, undertaken without a reasonable inquiry and without a reasonable argument to support non-enforcement of the Letter Agreement, was filed in obvious breach of her covenant not to sue and in bad faith.

49. As a direct and proximate result of the obvious breach of the Letter Agreement, WPC has incurred damages in the amount of its costs, expenses and disbursements defending the claims asserted in the FINRA arbitration and pursuing this action.

### Prayer for Relief

**WHEREFORE,** WPC respectfully requests that a judgment be entered as follows:

(a) declaring the Letter Agreement valid and binding and the claims pursued by Ms. Bigler validly released pursuant to that Agreement;

(b) granting judgment in WPC's favor on its claim for breach of the covenant not to sue;

(c) awarding to WPC its damages incurred as a result of the breach of the covenant not to sue, including, but not limited to, WPC's attorneys' fees and expenses and all other costs and disbursements incurred in connection with the FINRA arbitration and this action; and

(d) granting pre- and post-judgment interest to WPC; and

(e) granting such other and further relief to WPC as this Court deems just and proper.

Dated:  New York, New York
        January 22, 2018

                                  Respectfully submitted,

                                  DEBEVOISE & PLIMPTON LLP

                                  By:    /s/ Jyotin Hamid
                                         Jyotin Hamid
                                         Brooke J. Willig
                                         919 Third Avenue
                                         New York, New York 10022
                                         Tel: (212) 909-1031
                                         jhamid@debevoise.com
                                         bjwillig@debevoise.com

                                         *Attorneys for Plaintiff W. P. Carey Inc.*